UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

--------------------------------------------------------------- x

JEANETTE OLAYA,                              :
                                             :
                          Plaintiff,         :
                                             :          **MEMORANDUM &**
          -against-                          :          **ORDER**
                                             :
BEACON COMMUNITIES CORP. *et al.*,           :          3:22-CV-882 (VDO)
                                             :
                          Defendants.        :
--------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

      This matter is before the Court on Defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). (Defs. Mot., ECF No. 17.) Plaintiff Jeanette Olaya brought this action against Defendants Beacon Communities Corp., Beacon Communities REI LLC, and Beacon Communities Services LLC (collectively, "Defendants"), alleging causes of actions for intentional infliction of emotional distress, negligent hiring and retention, and violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C § 2000e *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §46a-60 *et seq.* (Compl., ECF No. 1 at 7–26.) Plaintiff asserts that, while employed by Defendants, she was subject to sexual harassment and a hostile work environment and was retaliated against because of complaints about such discrimination. (*Id.*) For the reasons set forth below, Defendants' motion is **granted in part and denied in part**.

I.    **BACKGROUND**[1]

A.    **The Parties**

Defendants jointly operate a real estate firm that develops, acquires, invests, and manages a range of multi-family housing. (Compl. ¶ 17.) Beacon Communities REI LLC and Beacon Communities Services LLC are wholly owned subsidiaries of Beacon Communities Corp. (*Id.* ¶ 11.) Beacon Communities Corp. controlled and managed personnel and effectuated material decisions relating to its wholly owned subsidiaries. (*Id.* ¶ 12.) Defendants hired Plaintiff in August 2019. (*Id.* ¶ 18.)

Plaintiff is a heterosexual woman residing in Connecticut. (*Id.* ¶ 20.) Plaintiff worked as a temporary administrative assistant, earning an annual salary of $40,000. (*Id.* ¶¶ 18, 21.) Her responsibilities included answering the phones, transferring calls, collecting rents, greeting people who came into the office, receiving applications, updating the rental waiting list, and assisting other employees. (*Id.* ¶ 19.) Plaintiff received favorable reviews in connection with her job performance and, as a result, received two promotions and became a resident services coordinator. (*Id.* ¶ 22–24.) Plaintiff's salary was increased to $52,000 per year. (*Id.* ¶ 25.)

B.    **Alleged Unlawful Conduct**

Beginning around September 2019, a maintenance worker for Defendants, Carlos Martinez, repeatedly commented to Plaintiff that he liked the way Plaintiff's body looked. (*Id.* ¶¶ 26–27.) In response, Plaintiff advised Martinez that she would not tolerate sexual harassment, complained to him about discrimination, and rejected his sexual advances. (*Id.* ¶

---

[1] The Court accepts as true the factual allegations in the Complaint and draws all reasonable inferences in Plaintiff's favor for the purpose of deciding Defendants' motion.

28.) Plaintiff also complained to Defendants' staff, including Maintenance Supervisor Jonathan Kopylec and Assistant Maintenance Supervisor Jose Roman. (*Id.* ¶ 29.)

In or around October 2019, Plaintiff began a working relationship and friendship with Maria Camacho. (*Id.* ¶ 29.) On November 2, 2019, Camacho solicited Plaintiff to join her and her boyfriend, who was Martinez, for a threesome. (*Id.* ¶¶ 31, 34.)

On November 5, 2019, Plaintiff complained to Kopylec that Camacho had propositioned her for a sexual encounter and described other instances of sexual harassment against her. (*Id.* ¶ 35.) Kopylec failed to acknowledge or investigate Plaintiff's complaint of sexual harassment by Camacho against Plaintiff. (*Id.* ¶ 37.) Even after Plaintiff's complaints of sexual harassment to Defendants, Camacho continued to solicit Plaintiff for a threesome with Martinez. (*Id.* ¶ 38.)

In November 2019, Martinez waited outside of Plaintiff's apartment to solicit Plaintiff for sex. (*Id.* ¶¶ 40-41.) That same day, Plaintiff reported Martinez's behavior to Kopylec. (*Id.* ¶ 43.) Kopylec refused to acknowledge or investigate Plaintiff's complaint. (*Id.* ¶ 44.)

Despite Plaintiff's complaints to Kopylec, Plaintiff continued to receive solicitations for sex from Camacho and Martinez. (*Id.* ¶ 45.) For example, around June 2020, Roman asked Plaintiff to print paystubs for Martinez at Defendants' principal office in Massachusetts. (*Id.* ¶¶ 46–47.) There, Martinez cornered Plaintiff and said, "What I really want are kisses from you." (*Id.* ¶ 48.) Plaintiff rejected Martinez's sexual advances and advised him "not to disrespect her.". (*Id.* ¶ 49.) Plaintiff again reported Martinez's behavior to Kopylec, who again failed to acknowledge or investigate the conduct against Plaintiff. (*Id.* ¶¶ 51–52.)

Camacho and Martinez conspired to invite Plaintiff to the beach for the purpose of obtaining full-body photographs of Plaintiff. (*Id.* ¶ 57.) On June 27, 2021, Camacho invited

Plaintiff to the beach. (*Id.* ¶ 53.) While at the beach, Camacho insisted on taking pictures of Plaintiff, demanding that she pose for pictures while wearing a bikini that exposed her breasts and body. (*Id.* ¶ 54.) Plaintiff complained that she only wanted headshots and did not want any full-body photographs. (*Id.* ¶ 55.) Shortly after taking pictures of Plaintiff, Camacho placed a call to Martinez and informed him, "I did it." (*Id.* ¶ 56.) Plaintiff then gave Camacho access to her social media accounts because Camacho wanted to see additional photographs of Plaintiff. (*Id.* ¶¶ 59–60.) Thereafter, Plaintiff complained of Camacho's conduct to various members of Defendants' staff. (*Id.* ¶ 62.)

Plaintiff reiterated concerns for her health and safety to Kopylec based on Martinez's and Camacho's conduct. (*Id.* ¶ 67.) Plaintiff demanded that she be referred to Defendants' Human Resources Department to draft and voice an internal complaint of discrimination. (*Id.* ¶ 69.) Kopylec refused. (*Id.* ¶ 70.) Instead, Kopylec forced Plaintiff to report her complaints to Dana Proctor, who was an Assistant Property Manager. (*Id.* ¶ 71.) On or about July 7, 2021, Plaintiff submitted a written complaint to Proctor. (*Id.* ¶ 74.) Subsequently, Proctor reported Plaintiff's complaints to John Elliot, a Region 1 Manager, and Nanette Macedo, a Senior Employee Relations Specialist for Defendants. (*Id.* ¶ 75.) In response, on July 19, 2021, Defendants informed Plaintiff that her complaints were unsubstantiated. (*Id.* ¶ 77.)

Plaintiff then expressed concerns for her safety and wellbeing to another supervisor, Zenaida Junes, who was a Senior Property Manager. (*Id.* ¶ 79.) Junes did not investigate Plaintiff's complaints and refused to transfer Plaintiff to a role where she could avoid contact with Martinez, Camacho, and Kopylec. (*Id.* ¶ 82.)

In June and July 2021, Defendants subjected Plaintiff to a heightened level of micromanagement, scrutiny, and employee discipline. (*Id.* ¶ 86.) Junes would continually roll

her eyes at Plaintiff, and when Plaintiff asked Junes questions, Junes would reply that Plaintiff was asking too many questions and was not listening to Junes. (*Id.* ¶ 87.) On July 20, 2021, Junes approached Plaintiff and reprimanded her for discussing the contents of the complaints with her supervisors and co- workers. (*Id.* ¶ 88.) Defendants also mandated Plaintiff to complete sexual harassment training, even though Plaintiff had recently completed the same training in April 2021. (*Id.* ¶ 89.) Defendants, however, did not force Martinez or Kopylec to attend sexual harassment trainings. (*Id.* ¶ 90.) Around July 28, 2021, Defendants denied Plaintiff's expense reimbursement and questioned the need for a security camera in Defendants' office, even though these expenses were previously authorized by Defendants' staff to protect Plaintiff due to the lack of security at the office. (*Id.* ¶¶ 91–92.)

Feeling helpless, on or about July 30, 2021, Plaintiff submitted her two weeks' notice of resignation to Defendants. (*Id.* ¶ 94.) Defendants immediately terminated Plaintiff's employment around July 31, 2021. (*Id.* ¶ 98.)

### C.    Procedural History

On October 12, 2021, Plaintiff filed a complaint with the State of Connecticut Commission on Human Rights and Opportunities ("CHRO") and cross-filed with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on sex, sexual harassment, and constructive discharge. (Compl. ¶ 8; ECF No. 18 at 39, 46.) Plaintiff also alleged that she was retaliated against for her previous opposition to discriminatory conduct. (ECF No. 18 at 39.) Plaintiff only named "Beacon Communities, LLC" as a respondent. (*Id.*) On March 18, 2022, Plaintiff received a Release of Jurisdiction from the CHRO. (Compl. ¶ 3.)

In July 2022, Defendants removed this action from the Superior Court for the Judicial District of New Haven, where Plaintiff filed a complaint on June 13, 2022. (ECF No. 1.) Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Defs. Mot., ECF No. 17.) The motion was fully briefed on November 15, 2022.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss For Lack of Jurisdiction

A party may move to dismiss a complaint for "lack of subject-matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When the Rule 12(b)(1) motion is facial, "*i.e.*, one 'based solely on the allegations of the complaint or the complaint and exhibits attached to it,' plaintiffs have no evidentiary burden, for both parties can be said to rely solely on the facts as alleged in the plaintiffs' pleading." *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (quoting *Carter*, 822 F.3d at 57). The pleading must "show[] by a preponderance of the evidence that subject matter jurisdiction exists." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003). In ruling on a jurisdictional challenge to the complaint, "a court accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Id.*

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading." *Carter*, 822 F.3d at 57 (citations omitted). "It is only where 'jurisdictional facts are placed in dispute' that the court has the 'obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022) (quoting *Tandon v. Captain's Cove*

*Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)). "If the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision[.]" *Carter*, 822 F.3d at 57.

### B.    Motion to Dismiss For Failure to State a Claim

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). "To survive dismissal, the pleadings must contain 'enough facts to state a claim to relief that is plausible on its face[.]'" *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.    <u>DISCUSSION</u>

Defendants move to dismiss Plaintiff's Complaint, asserting the following procedural arguments: **(1)** Plaintiff failed to administratively exhaust her remedies for her discrimination and retaliation claims under Title VII and CFEPA; and **(2)** Plaintiff failed to commence her sex and gender discrimination claims under Title VII and CFEPA within the statute of limitations. (Defs. Mem., ECF No. 18 at 6–8, 22–23.) As to the merits, Defendants assert that Plaintiff failed to plausibly allege causes of action for sex and gender discrimination (*id.* at 9–16), retaliation (*id.* at 16–22), intentional infliction of emotional distress (*id.* at 23–28), and negligent hiring (*id.* at 28–31.) The Court will first address the procedural arguments.

**A.    Procedural Matters**

**1.    Exhaustion of Administrative Remedies**

Defendants seek dismissal of Plaintiff's discrimination and retaliation claims under Title VII and CFEPA because Plaintiff failed to exhaust her administrative remedies. Specifically, Defendants argue that Plaintiff improperly named "Beacon Communities, LLC" in her CHRO complaint. (*Id.* at 22–23.) In response, Plaintiff asserts that the identity of interest exception applies here, allowing the Title VII and CFEPA claims to proceed against parties who were not named in the CHRO complaint. (Pl. Mem., ECF No. 30 at 14-19.)

"Ordinarily, a plaintiff seeking to bring a claim pursuant to . . . Title VII, or . . . CFEPA . . . must exhaust administrative remedies through the EEOC or CHRO." *Soules v. Connecticut et al.*, 882 F.3d 52, 57 (2d Cir. 2018). An agency "investigates the allegations and determines whether they ought to bring claims against the employer, or whether they ought to release jurisdiction and allow the plaintiff to pursue their claims individually." *Wilson v. Conn. Dep't of Transportation*, No. 3:22-CV-537 (OAW), 2023 WL 8476262, at *5 (D. Conn. Dec. 7, 2023). "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1851, 204 L. Ed. 2d 116 (2019); *see also Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015) (explaining that, although an administrative complaint is a "precondition to suit", it does not operate as a jurisdictional bar). Unlike Title VII, the failure to exhaust administrative remedies for a CFEPA claim "deprive[s] the trial court of jurisdiction to hear [the] complaint." *Sullivan v. Bd. of Police Comm'rs of City of Waterbury*, 491 A.2d 1096, 1102 (Conn. 1985).

"[A]n important piece of the administrative exhaustion requirement is that the complaint to the administrative agency must name the defendant." *Parlato v. Town of E. Haven*, No. 3:22-CV-1094 (SVN), 2023 WL 5206873, at *6 (D. Conn. Aug. 14, 2023) (Title VII); *see also Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 273 (D. Conn. 2010) (CFEPA). However, an employment discrimination action "may proceed against an unnamed party where there is a clear *identity of interest* between the unnamed defendant and the party named in the administrative charge." *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991) (emphasis added) (Title VII); *see also Malasky v. Metal Prods. Corp.*, 44 Conn. App. 446, 455–56 (Conn. App. Ct. 1997) (CFEPA). In determining whether the identity of interest exception allows a case to proceed against a defendant who was unnamed in an administrative charge, a court considers the following factors:

> (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the [administrative] complaint,

> (2) whether the interests of the party named in the administrative complaint "are so similar as the unnamed party's that, for compliance purposes, it would be unnecessary to include the unnamed party in the [administrative] proceedings,

> (3) whether the unnamed party's absence from the administrative proceedings resulted in actual prejudice to the interests of the unnamed party, and

> (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Parlato,* 2023 WL 5206873, at *7 (internal citation and quotation marks omitted). "This test is 'not a mechanical one, and no single factor is dispositive.'" *Id.* (quoting *Zustovich v. Harvard Maintenance, Inc.*, No. 08-CV-6856 (HB), 2009 WL 735062, at *8 (S.D.N.Y. Mar. 20, 2009)).

The Court finds that the factors weigh in favor of allowing Plaintiff's Title VII and CFEPA claims to proceed under the identity of interest exception. The first factor weighs in favor of the identity of interest exception because Plaintiff's information as to Defendants' corporate structure was limited. Defendants did not oppose Plaintiff's contention that information as to their corporate structure was not available to Plaintiff. (*See generally* Defs. Reply, ECF No. 33.) Plaintiff cannot be expected to name corporate affiliates in an administrative complaint when their identities are not publicly available.

The second factor similarly weighs in favor of Plaintiff. Plaintiff has plausibly alleged that the interests of the party named in the administrative complaint "are so similar as the unnamed party's that," for compliance purposes, "it would be unnecessary to include the unnamed party in the [administrative] proceedings." *Johnson*, 931 F.2d at 209–10. Plaintiff only named "Beacon Communities, LLC" in her CHRO complaint. (Defs. Ex. B, ECF No. 18 at 39 (emphasis added).) However, Plaintiff alleges that defendant Beacon Communities Corp. controlled and managed personnel and effectuated material decisions related to its wholly owned subsidiaries, defendants Beacon Communities REI LLC and Beacon Communities Services LLC. (Compl. ¶ 12 (emphasis added).) Additionally, Plaintiff alleges that Defendants jointly operate a real estate firm that develops, acquires, invests, and manages a range of multi-family housing. (*Id.* ¶ 17.) Plaintiff thus shows that the interests of the Beacon Defendants are identical to the party named in Plaintiff's CHRO complaint. *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1242 (2d Cir. 1995) (finding that the identity of interest exception applies to the parent company and its subsidiaries where that parent "approves all personnel decisions" of its wholly-owned subsidiary).

The third factor, whether there is "actual prejudice to the interests of the unnamed party," also weighs in favor of applying the identity of interest exception. Plaintiff asserts that Defendants are not prejudiced as they were notified of the charge and were present at the mandatory mediation during the administrative proceedings. (Pl. Mem., ECF No. 30 at 16.) Defendants do not contend that they are prejudiced. (Defs. Reply, ECF No. 33.) Because Defendants devote no briefing to the issue of prejudice, it is likely that they have not suffered any prejudice by being named as defendants in the instant action. *Parlato*, 2023 WL 5206873, at *9.

Finally, the fourth factor does not weigh in favor of any party as neither Plaintiff nor Defendants provide arguments in support of the Court finding in their favor.

The weighing of the factors thus counsels in favor of finding that the identity of interest exception applies here, thus precluding dismissal for Plaintiff's failure to name Defendants in the administrative charge.

### 2.    Statute of Limitations

Defendants contend that Plaintiff's hostile work environment claims under Title VII and CFEPA are time-barred because her administrative complaint was not filed within 300 days of the alleged discriminatory act. (Defs. Mem., ECF No. 18 at 7-8.) In response, Plaintiff asserts that the claims are timely because the "continuing violation" doctrine applies. (Pl. Mem., ECF No. 30 at 21-23.)

"In states . . . that have local administrative mechanisms for pursuing discrimination claims[,]" before commencing a Title VII suit in court, a plaintiff must file a charge with an agency within "300 days 'after the alleged unlawful employment practice occurred.'" *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023) (quoting 42 U.S.C. § 2000e-(e)(1)); *see*

*also* Conn. Gen. Stat. § 46a-82(f)(1) (a plaintiff must file an administrative complaint "not later than three hundred days after the date of the alleged act of discrimination"). "An exception to the 300-day rule applies, however, if the discrimination constitutes a 'continuing violation.'" *Banks*, 81 F.4th at 259 (Title VII); *see also Patino v. Birken Mfg. Co.*, 304 Conn. 679, 683 n.3 (Conn. 2012) (CFEPA).

The continuing violation doctrine provides that, where there is a "'continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *Hudson v. W. N.Y. Bics Div.*, 73 F. App'x 525, 528 (2d Cir. 2003) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)). It "applies not to discrete unlawful acts, even where those discrete acts are part of 'serial violations,' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002)). "If a continuing violation is found, a court must then consider 'all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred.'" *Banks*, 81 F.4th at 259 (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996)). Thus, if a "plaintiff files an [administrative] charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth.*, 685 F.3d 135, 155-56 (2d Cir. 2012).

Because Plaintiff filed a complaint with the CHRO on October 13, 2021 (ECF No. 17 at 39), she can only recover for Title VII and CFEPA violations occurring on or after December

17, 2020, unless the continuing violation doctrine applies. The allegations that would be time-barred include: Martinez repeatedly commenting to Plaintiff that he liked the way Plaintiff's body looked in September 2019 (Compl. ¶¶ 26–27); Martinez visiting Plaintiff's apartment to solicit her for sex in November 2019 (*id.* ¶ 41); Martinez cornering Plaintiff and saying "what I really want are kisses from you" in June 2020 (*id.* ¶ 48); and Defendants' employee repeatedly refusing to acknowledge or investigate Plaintiff's complaint regarding Martinez's behavior. (*Id.* ¶¶ 44, 52.)

At this juncture, however, the Court agrees with Plaintiff that the continuing violation doctrine is applicable here. Defendants' contention that the events alleged in the Complaint are discrete acts is unavailing. Plaintiff brings claims for hostile work environment. "Unlike discrete discriminatory or retaliatory actions, incidents that give rise to a hostile work environment 'occur[ ] over a series of days or perhaps years and . . . a single act of harassment may not be actionable on its own.'" *Banks*, 81 F.4th at 260 (quoting *Morgan*, 536 U.S. at 115) (alteration in original). "Therefore, it does not matter if 'some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" *Mallison v. Conn. Off. of Early Childhood*, 634 F. Supp. 3d 21, 33 (D. Conn. 2022) (quoting *Morgan*, 536 U.S. at 115).

Plaintiff alleges that Defendants' employee, Martinez, committed at least one act within the statute of limitations that contributed to the hostile work environment—conspiring with his girlfriend Camacho to invite Plaintiff to the beach on June 27, 2021 for the purpose of obtaining Plaintiff's photographs. (Compl. ¶¶ 53–57.) Because this final act is alleged to have

taken place after December 17, 2020, "all prior acts related to Plaintiff's hostile work environment claim are appropriately considered." *Mallison*, 634 F. Supp. 3d at 33. It is thus premature to dismiss the hostile work environment claims for being time-barred. *Allen v. Egan*, 303 F. Supp. 2d 71, 79 (D. Conn. 2004).

Accordingly, the motion to dismiss Plaintiff's hostile work environment claims under Title VII and CFEPA for being time-barred is denied.

**B.     Failure to State a Claim**

As explained below, because the Court concludes that Plaintiff has plausibly alleged claims of hostile work environment, retaliation, and negligent supervision related to Defendants' employee, Martinez, it does not reach any alternative theories of liability related to other employees or non-employee Camacho. *See NovaFund Advisors, LLC v. Capitala Grp., LLC*, No. 3:18-CV-1023 (MPS), 2021 WL 3568892, at *16 (D. Conn. Aug. 11, 2021) (finding that, on a motion to dismiss, "parties are not entitled to a determination that certain of the alternative legal theories under which the plaintiff might be entitled to relief will not fly"). However, the Court finds that Plaintiff has failed to state a claim for intentional infliction of emotional distress.

**1.     Hostile Work Environment (Counts One and Three)**

Plaintiff alleges that she was subject to a hostile work environment because Defendants' employee sexually harassed her by soliciting her for threesomes, soliciting her for semi-nude photographs of her body, and objectifying her physical appearance based on her sex and gender, despite complaints by Plaintiff to Defendants.

When a plaintiff alleges a hostile work environment claim, a plaintiff must "show that his or her workplace was 'so severely permeated with discriminatory intimidation, ridicule,

and insult that the terms and conditions of [his or] her employment were thereby altered.'" *Agosto v. N.Y. City Dep't of Educ.*, 982 F.3d 86, 101 (2d Cir. 2020) (quoting *Desadouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013)) (alteration in original).[2] "In determining whether a plaintiff suffered a hostile work environment, [a court] must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Littlejohn*, 795 F.3d at 319 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The standard for a hostile work environment claim includes "objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (citing *Harris*, 510 U.S. at 21-22). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal citation and quotation marks omitted). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Id.* Additionally, there must be a "specific basis [] for imputing the conduct that created the hostile environment to the employer." *Agosto*, 982 F.3d at 102.

Here, Plaintiff alleges at least the following incidents: in or around September 2019, Martinez told Plaintiff that he liked the way Plaintiff's body looked; in or around November

---

[2] "The analysis of discrimination and retaliation claims under CFEPA is the same as under Title VII." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010).

2019, Plaintiff observed Martinez outside of her apartment; and in or around June 2020, while in an office with Martinez, he said to her, "What I really want are kisses from you." (Compl. ¶¶ 26–27, 40, 47–48.) Plaintiff also alleges that Martinez conspired with his girlfriend to repeatedly solicit a threesome with Plaintiff and to obtain photos of Plaintiff in a bikini. (*Id.* ¶¶ 54–55.) And Plaintiff's colleagues allegedly refused to investigate multiple complaints regarding Martinez's behavior and subjected Plaintiff to a heightened level of micromanagement, scrutiny, and employee discipline. (*Id.* ¶¶ 44, 52, 86.)

Viewing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in Plaintiff's favor, the Court finds that the inappropriate conduct alleged by Plaintiff establishes "an objectively hostile or abusive work environment." *Agosto*, 982 F.3d at 101. "'Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature'" can contribute to an unlawful work environment. *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 64 (1986)). The alleged conduct here is explicitly of a sexual nature that invokes Plaintiff's sex or gender identity. Nevertheless, "facially sex-neutral incidents may be included among the totality of the circumstances that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on sex." *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 203 (2d Cir. 2014) (internal citation and quotation marks omitted). Here, the alleged "conduct could plausibly be found to constitute something well beyond the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers . . . rising to the level of an abusive working environment." *Perry v. Slensby*, No. 16-CV-08947 (NSR), 2018 WL 1136922, at *8 (S.D.N.Y. Feb. 28, 2018)

(internal citation and quotation marks omitted) (denying motion to dismiss on single allegation that a defendant made a sexual comment while massaging plaintiff's shoulders).

The Court also finds that there are sufficient allegations "for imputing the conduct that created the hostile environment to" Defendants. *Agosto*, 982 F.3d at 102. Defendants overstate their case by asserting that there are only conclusory allegations that Defendants did not investigate or acknowledge her complaint in good faith. To show that Defendants failed to take appropriate remedial action, "a plaintiff [must] show that (1) *someone* had actual or constructive knowledge of the harassment, (2) the knowledge of this individual can be imputed to the employer, and (3) the employer's response, in light of that knowledge, was unreasonable." *Duch v. Jakubek*, 588 F.3d 757, 763 (2d Cir. 2009). Here, there is no doubt that Defendants' personnel had actual knowledge of the alleged incidents regarding Martinez's unwelcome sexual advances. Indeed, Plaintiff submitted complaints to multiple supervisors who possessed authority to effectuate personnel decisions. (Compl. ¶¶ 71-73, 79-84.) Plaintiff has plausibly alleged that notice may be imputed to Defendants based on the supervisors' knowledge. *Torres v. Pisano*, 116 F.3d 625, 636 (2d Cir. 1997).

Accordingly, Defendants' motion to dismiss Plaintiff's hostile work environment claims is denied.

### 2.      Retaliation (Counts Two and Four)

Plaintiff alleges that she was subject to retaliation after she reported sexual harassment to her supervisors.

When a plaintiff alleges a retaliation claim under Title VII, a plaintiff "must demonstrate that (1) she engaged in protected activity, (2) the defendant was aware of that activity, (3) she was subjected to a retaliatory action, or a series of retaliatory actions, that were

materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions." *Carr v. N.Y. City Transit Auth.*, 76 F.4th 172, 180 (2d Cir. 2023). "As the elements of a CFEPA retaliation claim are the same as those of a Title VII retaliation claim, case law interpreting retaliation under Title VII is instructive." *Dagenais v. Wal-Mart Stores E., LP*, No. 3:23-CV-241 (SVN), 2023 WL 7220753, at *2 (D. Conn. Nov. 2, 2023). "[A]t the initial stage of a litigation, the plaintiff's burden is 'minimal'—[s]he need only plausibly allege facts that provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86–87 (2d Cir. 2015) (quoting *Littlejohn*, 795 F.3d at 311).

Defendants assert that Plaintiff's retaliation claims fail as a matter of law because Defendants did not take a materially adverse employment action against Plaintiff. (Defs. Mem., ECF No. 18 at 17–20.) Instead, Defendants argue that the alleged conduct towards Plaintiff following her complaints of sexual harassment are nothing more than petty slights and minor annoyances. (*Id.* at 17–18.) The Court disagrees.

The Court finds that Plaintiff plausibly alleged that she was subjected to a retaliatory action that was materially adverse. To show a materially adverse action, a retaliation plaintiff must "show that the challenged action well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citation and quotation marks omitted). In isolation, the allegations regarding Defendants' employee subjecting Plaintiff to a heightened level of micromanagement, scrutiny, and employee discipline (Compl. ¶¶ 44, 52, 86) are not sufficient to show a materially adverse action because "ostracism, shunning, or being given the proverbial cold shoulder generally do not rise to the level of a materially adverse employment

action." *Parlato*, 2023 WL 5206873, at *18 (collecting cases). These allegations do not show there were "denials of workplace opportunities that affect the terms and conditions of employment." *Buon*, 65 F.4th at 80. But "[c]ontext matters." *Burlington*, 548 U.S. at 69. Here, Plaintiff also alleges that her request to be transferred to any role for Defendants where she could avoid contact with Martinez was denied. (Compl. ¶ 82.) It is reasonable to infer that subjecting a plaintiff to a heightened level of micromanagement, scrutiny, and employee discipline, in addition to forcing that plaintiff to work in proximity with her alleged harasser could dissuade a reasonable worker from making or supporting a charge of discrimination. *Dagenais*, 2023 WL 7220753, at *3.

Accordingly, the motion to dismiss Plaintiff's retaliation claims under Title VII and CFEPA on the merits is denied.

### 3.    Intentional Infliction of Emotional Distress (Count Five)

Plaintiff alleges an intentional infliction of emotional distress claim on the grounds that Defendants' employees sexually harassed her and failed to investigate, in good faith, Plaintiff's complaints of sexual harassment.

When a plaintiff alleges an intentional infliction of emotional distress claim under Connecticut law, it must set forth sufficient allegations "'(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.'" *Apatow v. Town of Stratford*, 651 F. Supp. 3d 573, 591 (D. Conn. 2023) (quoting *Watts v. Chittenden*, 22 A.3d 1214, 1221 (Conn. 2011)). Additionally, "in order to hold an employer liable for the intentional torts of his employee, the employee must be

acting within the scope of his employment and in furtherance of the employer's business." *A-G Foods, Inc. v. Pepperidge Farm, Inc.*, 579 A.2d 69, 73 (Conn. 1990). "[I]t must be the affairs of the principal, and not solely the affairs of the agent, which are being furthered in order for the doctrine to apply." *Id.* (internal citation and quotation marks omitted).

As a preliminary matter, Plaintiff does not offer any binding authority in support of her position that Defendants can be liable for intentional infliction of emotional distress as a result of non-employee Camacho's actions. Citing *Summa v. Hofstra Univ.*, 708 F.3d 115 (2d Cir. 2013), *Menaker v. Hofstra Univ.*, 935 F.3d 20 (2d Cir. 2019), and *Leroy v. Delta Air Lines, Inc.*, 36 F.4th 469 (2d Cir. 2022), Plaintiff claims a non-employee's actions could be imputed to Defendants because Defendants exercised control over the third party and could have instructed her to stop the harassment. However, those cases are distinguishable because the courts there analyzed liability under Title VII and New York law whereas, here, the claim involves Connecticut law. "Under Connecticut law, a master is liable for the willful torts of his servant committed within the scope of the servant's employment and in furtherance of his master's business under the doctrine of *respondeat superior*." *Wade v. Kay Jewelers, Inc.*, No. 3:17-CV-990 (MPS), 2018 WL 4440532, at *3 (D. Conn. Sept. 17, 2018) (internal citation and quotation marks omitted). Plaintiff does not plead facts sufficient to show that there was an employment relationship between Camacho and Defendants. Plaintiff's intentional infliction of emotional distress claim relating to Camacho's actions thus fails.

With respect to the actions of Defendants' employees, Plaintiff alleges that Defendants are vicariously liable for intentional infliction of emotional distress under the following theories: **(1)** "engag[ing] in an extreme and outrageous scheme to sexually harass Plaintiff and otherwise discriminate against her on the basis of her sex and gender (Compl., ¶ CC); and **(2)**

"fail[ing] to correct or otherwise remedy Defendants' discriminatory and retaliatory misconduct." (*Id.* ¶ DD.) The Court finds that, under either theory, Plaintiff fails to allege facts sufficient to support a claim of intentional infliction of emotional distress.

First, Plaintiff alleges that Martinez engaged in repeated instances of sexual harassment by commenting on Plaintiff's body, cornering Plaintiff to ask for kisses, appearing at Plaintiff's doorstep to solicit sex, and conspiring with others to obtain Plaintiff's photographs. (*Id.* ¶¶ 25–29, 39–43, 49–51, 67.) The problem with this theory, however, is that Plaintiff fails to allege facts to plausibly support that Martinez was "acting within the scope of his employment and in furtherance of the employer's business." *A-G Foods, Inc.*, 579 A.2d at 73. While some of the alleged events happened at their place of employment, it would be a stretch to conclude that the interactions between Martinez and Plaintiff are the type of conduct that Martinez is expected to perform as a maintenance worker. *See id.* at 74 (finding that conduct that "occurred during business hours . . . is not sufficient to support the conclusion that [the employee] was acting within the scope of [his] employment"). The Complaint is also silent on how Martinez's actions furthered Defendants' business of managing multi-family housing. (Compl. ¶ 17.) Even if Plaintiff pled facts regarding Martinez's scope of employment, "[c]ourts have even dismissed such claims as insufficiently extreme and outrageous when plaintiffs alleged discriminatory intent or motive." *Howell v. Yale Univ.*, No. 3:22-CV-01160 (JCH), 2023 WL 6295648, at *7 (D. Conn. Sept. 26, 2023) (collecting cases).

Plaintiff's theory involving Defendants' retaliatory misconduct and lack of good faith investigation of Plaintiff's claims of sexual harassment fares no better. Plaintiff alleges that her colleagues and supervisors refused to acknowledge or investigate multiple complaints regarding Martinez's behavior and that they subjected Plaintiff to a heightened level of

micromanagement, scrutiny, and employee discipline. (*Id.* ¶¶ 44, 52, 86.) But "[l]iability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society." *Nwachukwu v. Liberty Bank*, 257 F. Supp. 3d 280, 297 (D. Conn. 2017). The alleged failure to respond complaints of harassing conduct does not rise to the level of extreme or outrageous behavior, nor does it constitute a basis for vicarious liability. *Sangan v. Yale Univ.*, No. 06-CV-587 (PCD), 2006 WL 2682240, at *8 (D. Conn. Sept. 15, 2006) (collecting cases); *see also Tomby v. Cmty. Renewal Team, Inc.*, No. 3:09-CV-1596 (CFD), 2010 WL 5174404, at *8 (D. Conn. Dec. 15, 2010) (dismissing intentional infliction of emotion distress claim where there were allegations of verbal harassment, a hostile work environment, and a disproportionate work load).

Accordingly, Plaintiff's claim of intentional infliction of emotional distress against Defendants is dismissed.

### 4.    Negligent Hiring and Supervision (Count Six)

Plaintiff alleges a cause of action for negligent hiring and retention of Defendants' employees, Kopylec and Martinez, due to their alleged participation in a scheme to discriminate against Plaintiff on the basis of her sex and gender.

When a plaintiff alleges a negligent supervision claim under Connecticut law, she "must plead and prove that she suffered an injury due to the defendant's failure to supervise an employee whom the defendant had [a] duty to supervise." *Brooks v. Sweeney*, 9 A.3d 347, 355 n.12 (Conn. 2010). "A defendant does not owe a duty of care to protect a plaintiff from another employee's tortious acts unless the defendant knew or reasonably should have known of the employee's propensity to engage in that type of tortious conduct." *Gray v. Nordstrom*, No. 3:18-CV-1402 (KAD), 2019 WL 2193463, at *5 (D. Conn. May 21, 2019) (internal

citation and quotation marks omitted). "To find a plausible negligent hiring and supervision claim, there must be some factual basis to support the inference that [a defendant's employee] had the propensity to engage in the type of conduct that is the basis of the [] Complaint." *Pittman v. Bombardier Recreational Prod., Inc.*, No. 3:22-CV-1115 (VAB), 2023 WL 4157345, at \*9 (D. Conn. June 23, 2023).

The Court finds that Plaintiff has stated a plausible claim for negligent supervision. There are sufficient facts to reasonably support the inference that Martinez had the propensity to engage in unwelcome sexual advances towards Plaintiff. As alleged, Defendants' personnel knew of a potential problem between Plaintiff and Martinez. Plaintiff complained of Martinez's behavior after he visited Plaintiff's apartment to solicit her for sex in November 2019 (Compl. ¶¶ 41, 44). Despite Plaintiff notifying Defendants of this unwarranted behavior, Defendant's employee refused to take action and Martinez continued to solicit Plaintiff for sex. (*Id.* ¶¶ 44–45.) Martinez then cornered Plaintiff and said, "What I really want are kisses from you." (*Id.* ¶ 48.) Defendants' employee again refused to acknowledge or investigate Plaintiff's complaint. (*Id.* ¶ 52.) After this incident, Martinez allegedly conspired with his girlfriend to obtain photos of Plaintiff in a bikini. The defendants therefore knew or should have known of Martinez's propensity to engage in tortious conduct. Thus, Defendants' motion to dismiss Plaintiff's negligent supervision claim is denied.

## IV.    CONCLUSION

For the reasons described above, Defendants' motion to dismiss (ECF No. 17) is **GRANTED** as to Count Five and **DENIED** as to Counts One, Two, Three, Four, and Six. Plaintiff's intentional infliction of emotional distress claim is **dismissed with prejudice**.

Accordingly, Defendants shall file an answer to the Complaint **within fourteen days of this**

**order.**

                                            **SO ORDERED.**

Hartford, Connecticut
February 12, 2024

                                            /s/Vernon D. Oliver
                                            VERNON D. OLIVER
                                            United States District Judge